IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AT&T MOBILITY LLC, NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY, AT&T MOBILITY NEXT OPERATIONS, LLC, CRICKET WIRELESS LLC, and AT&T CORP., | : <br> : <br> : <br> : <br> : Case No. 2:21-cv-00436 |
| Plaintiffs, | : <br> : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : <br> : Magistrate Judge Vascura |
| TAMER SHOUKRY, | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court on the Plaintiffs' Motion to Strike (ECF No. 17) and the Defendant's Motion for Summary Judgment (ECF No. 21). The Plaintiffs moved to strike Mr. Shoukry's second affirmative defense asserted in his Answer, which Mr. Shoukry opposes. (ECF Nos. 17, 19). Mr. Shoukry also seeks summary judgment, which Plaintiffs oppose. (ECF Nos. 21, 25). For the following reasons, this Court **GRANTS** the Plaintiffs' Motion to Strike and **DENIES WITHOUT PREJUDICE** Defendant's Motion for Summary Judgment.

### I.    BACKGROUND

#### A.    Factual Background

Cell phones are ubiquitous in modern life. Nearly as ubiquitous is the experience of entering into a contract with a wireless service provider as part of purchasing a new phone. AT&T, including its subsidiaries like Cricket, is one such provider of wireless service. (ECF No. 1 ¶ 13). AT&T sells new cell phones and other devices to individual consumers, as well as business customers. (*Id.*). The company expends substantial resources to ensure that it can offer a reliable,

1

nationwide wireless network to its customers, as well as high-quality phones for its customers to take advantage of that network. (*Id.* ¶ 14). AT&T is able to offer installment contracts, subsidies, discounts, and other rebates that make its phones affordable to customers. (*Id.*). These inducements depend on customers activating and using their phones with rate plans on the AT&T authorized network for a minimum time period in compliance with their contracts. (*Id.*).

One of the most popular phone choices today is the Apple iPhone. An iPhone purchaser can purchase a device that is either "locked" or "unlocked." When a device is "locked," the user is bound to use a specific wireless carrier, such as AT&T. (*Id.* ¶ 15). AT&T and other providers sell locked devices through installment plans, discounts, rebates, and subsidies that allow consumers to make low monthly installment payments or otherwise pay a reduced purchase price. (*Id.* ¶ 16). Locked iPhones contain SIM cards that are linked to the AT&T network, meaning these devices will only function on that network. (*Id.* ¶ 17). AT&T's business model of offering reduced price devices is only sustainable if the locked iPhone devices are activated and used as intended with the rate plans set forth in the purchaser's contract. (*Id.* ¶ 18). If a user fails to make installment payments, for instance, AT&T can enforce payment obligations by suspending or disconnecting service to the phone. (*Id.*). Locking phones for a specified period is a common industry practice. (*Id.* ¶ 20). If a customer wants an unlocked device, which would allow her to switch carriers as she so chooses, then she can purchase an unlocked device from a retailer at full price, which can be upwards of $1,000 for the newest version of the iPhone. (*Id.* ¶ 15).

AT&T sells wireless service on both prepaid and postpaid rate plans. (*Id.* ¶ 21). A prepaid plan allows a customer to pay in advance for a specified amount of services like voice, text, and data over a time period, while a postpaid plan bills customers using recurring monthly charges. (*Id.*). Both postpaid and prepaid plans require entering into a contract with AT&T or a subsidiary

2

like Cricket. (*Id.* ¶ 22). These contracts prohibit the unauthorized unlocking of an AT&T locked iPhone for a specific period of time. (*Id.* ¶ 23, 26–27, 36). For example, a locked iPhone sold under a Credit Sales Contract requires a user to wait at least 60 days after purchase and satisfy other contractual commitments, including making monthly payments and/or paying off the remaining balance, before she may unlock her iPhone. (*Id.* ¶ 33). Prepaid users must wait at least six months before their devices are eligible to be unlocked. (*Id.* ¶ 39). AT&T provides unlocking services free of charge to eligible customers. (*Id.*).

All iPhones are equipped with preinstalled, proprietary and copyrighted software belonging to Apple, including its iOS operating system. (*Id.* ¶ 47). On an unlocked device, a user can always access this software. (*Id.* ¶ 48). When a device is locked by a carrier, however, the carrier maintains the exclusive right to control access to the software through the "SIM Lock." (*Id.*). The SIM Lock restricts access to all functionality on locked devices when not connected to the authorized network. (*Id.*). The SIM lock remains in effect until AT&T receives a valid "unlock request" and subsequently unlocks the phone. (*Id.* ¶ 50). The SIM Lock works in interaction with the SIM cards placed in cell phones, which allow the device to access cellular networks. (*Id.* ¶ 51). SIM cards contain a unique 20-digit identifier know as an Integrated Circuit Card Identifier ("ICCID"). (*Id.*). When a SIM card is placed in a phone, the card and the phone communicate, allowing the phone to read information on the SIM card, including the ICCID. (*Id.*). Under typical circumstances, a user cannot change the ICCID transmitted from the SIM card to the phone or use more than one ICCID. (*Id.*).

AT&T's SIM Lock works by reading data from the SIM card, including its ICCID. (*Id.* ¶ 55). If the SIM Lock identifies an ICCID that is associated with a valid AT&T SIM card, SIM Lock allows full operation of the device. (*Id.*). If the ICCID number is not associated with a valid

3

AT&T SIM card, the iPhone will display a message that the SIM is not supported and will prevent the user from accessing the iPhone or any of its applications. (*Id.*). When a user unlocks her phone without authorization, circumventing SIM Lock, AT&T is harmed because this user can now take her phone to a competing provider and stop making any payments to AT&T, despite owing AT&T all or most of the money under her installment contract. (*Id.* ¶ 20). Essentially, she could put very little money down to get a new iPhone from AT&T, unlock the device in violation of her contract, and enter a new contract with a direct competitor. AT&T also loses its enforcement mechanism of terminating cellular service to the device when the device is unlocked. (*Id.*). AT&T's ability to provide more affordable devices to its customers is undermined by unauthorized unlocking. (*Id.* ¶ 58).

Enter the Genie SIM. The Genie SIM is a small hardware circumvention device. (*Id.* ¶ 59). The Genie SIM is inserted into the SIM card tray, where it sits between the metal contacts of a non-AT&T SIM card and the iPhone's internal metal contacts. (*Id.* ¶ 61). The Genie SIM can monitor and intercept messages being sent between the SIM card and the iPhone, allowing it to circumvent SIM Lock. (*Id.*). The Genie SIM allows a user to input an AT&T ICCID manually from an AT&T SIM card that is not actually in the device; that ICCID number must be obtained in addition to the device itself. (*Id.* ¶¶ 61–62). After that ICCID is input, the SIM lock is disabled, the iPhone is unlocked, and the device remains unlocked as long as the Genie SIM remains in the device. (*Id.*). These unauthorized AT&T ICCIDs will eventually become invalid, requiring a user to obtain and input a new ICCID to continue using the unlocked iPhone. (*Id.* ¶ 62).

Defendant Tamer Shoukry maintains a Facebook profile with the user handle "Tamermrwirelessohio." (*Id.* ¶ 67). On January 28, 2020, AT&T investigators contacted Mr. Shoukry on Facebook Messenger and inquired about purchasing Genie SIM devices. (*Id.*). Mr.

4

Shoukry then sold ten of these devices to the investigators for $15 each. (*Id.*). Mr. Shoukry informed the investigators that the Genie SIM devices could unlock iPhone models from iPhone 7 through the iPhone 11. (*Id.*). He also confirmed that it would work with new AT&T iPhone devices. (*Id.*). Mr. Shoukry then provided the investigators with instructions and instructional videos on using the Genie SIM devices. (*Id.*). He transmitted a "current" ICCID to the investigators over text message and informed them of an ICCID mining service that would allow them to continue to obtain recent, unauthorized ICCIDs. (*Id.*). Mr. Shoukry also told investigators that he was the owner of "Genie SIM" and sent a link to the website "unlockgeniesim.com." (*Id.*). On February 3, 2020, the investigators received ten Genie SIM devices via FedEx; Mr. Shoukry was identified on the package as the sender. (*Id.* ¶ 68).

The investigators contacted Mr. Shoukry again on February 21, 2020 via Facebook Messenger. (*Id.* ¶ 69). During this exchange, Mr. Shoukry "expressed his full understanding that the Genie SIM devices would be utilized to unlock ineligible locked devices under contract" and assured the investigators that their newly unlocked devices could not be relocked by AT&T, even if the phones remained under contract or were otherwise not paid off. (*Id.*). Mr. Shoukry directed investigators to the "geniesimhustlers" Facebook group and informed them that the group could provide technical support for the devices. (*Id.*).

        **B.**   **Procedural Background**

On January 29, 2021, AT&T filed suit against Mr. Shoukry, alleging violations of the Computer Fraud and Abuse Act, the Digital Millennium Copyright Act, and Ohio law. (ECF No. 1). Mr. Shoukry filed his answer to the complaint on March 2, 2021 and the parties were ordered to appear for an initial conference before Magistrate Judge Vascura on March 23, 2021. (ECF Nos. 8, 10). On March 18, 2021, the Plaintiffs filed the Motion to Strike Defendant's Second

5

Affirmative Defense that is now pending. (ECF No. 17). Mr. Shoukry opposes this Motion to Strike. (ECF No. 19). On March 23, 2021, the Magistrate Judge issued the preliminary pretrial order in the case, setting the close of discovery for April 22, 2022 and the dipositive motions deadline for May 24, 2022. (ECF No. 18). Not long after the initial conference, Mr. Shoukry filed his Motion for Summary Judgment. (ECF No. 21). The Plaintiffs opposed and he filed a reply in further support of his motion. (ECF Nos. 25, 34). Both Plaintiffs' Motion to Strike and Defendant's Motion for Summary Judgment are now ripe for consideration.

## II. STANDARD OF REVIEW

### A. Motion to Strike

Upon its own initiative or upon a motion by a party, a court may strike from a pleading an insufficient defense or any "redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f) of the Federal Rule of Civil Procedure. Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Kit Check, Inc. v. Health Care Logistics, Inc.*, No. 2:17-cv-01041, 2018 WL 2971104, at *1 (S.D. Ohio June 13, 2018) (quoting *Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013)). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Yates-Mattingly*, 2013 WL 526427, at *1 (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). Thus, a litigant advocating for a court to grant a motion to strike bears a heavy burden. *See Wilson v. Riley Contracting, Inc.*, No. 20-cv-04721, 2021 WL 1172244, at *2 (S.D. Ohio Mar. 29, 2021).

These motions should be denied unless "it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint the matter must be stricken as legally insufficient." *Id.* (quoting *Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp.

6

2d 894, 906 (N.D. Ohio 2003)). If the insufficiency of the defense is not "clearly apparent" or if it implicates factual issues that should be determined by a hearing on the merits, a court should deny the motion to strike. *Kit Check*, 2018 WL 2971104, at *1 (citing *Joe Hand Promotions, Inc. v. Havens*, No. 2:13-cv-0093, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013)). Granting a motion to strike may, however, be appropriate where it eliminates insufficient defenses that will save time and expense that would otherwise be spent "litigating issues which would not affect the outcome of the case." *Joe Hand*, 2013 WL 3876176, at *1.

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *See iU.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

### III.  LAW & ANALYSIS

#### A.  Plaintiffs' Motion to Strike

Plaintiffs move pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike Mr. Shoukry's second affirmative defense—that the Plaintiffs failed to join necessary parties—on the basis that the defense is legally insufficient, will not impact the resolution of the case, and promotes

8

judicial economy. The Defendant opposes the motion to strike, arguing that the underlying conspiracy to defraud in this case involves customers who are under contract with the Plaintiffs, making them necessary parties to the claim for conspiracy to defraud brought against Mr. Shoukry. (ECF No. 19). In response, the Plaintiffs argue that they are not required to name individuals who purchased the Genie SIM from Mr. Shoukry as defendants in this suit. (ECF No. 20 at 1–2). The Plaintiffs note that long-standing case law renders unlawful the sale of devices, like the Genie SIM, and so it can proceed solely against someone it believes sold the devices. (*Id.*).

A party will be considered a "necessary" party to litigation when the absence of that party will impair a court's ability to grant relief or if the person claims an interest at issue in the litigation. *See* Fed. R. Civ. P. 19(a). If joinder of that party is not feasible, a court must then determine whether the action should proceed regardless or whether the action should be dismissed. Fed. R. Civ. P. 19(b). The failure to join a party required by Rule 19(b) is an unwaivable defense that a defendant may raise at any time before the conclusion of a trial. Fed. R. Civ. P. 12(h)(2). Some courts have found that striking this defense for a failure to identify specific necessary parties has serves no practical purpose prior to discovery. *See, e.g.*, *Savage v. Citibank N.A.*, No. 14-cv-03633, 2015 WL 4880858, at *4 (N.D. Cal. Aug. 14, 2015). Importantly, this issue is before this Court on a motion to strike, rather than a motion for joinder. Typically, the burden rests on a defendant to show that parties are required to be joined under Rule 19. *See, e.g.*, *Eagle Realty Invs., Inc. v. Dumon*, No. 18-cv-362, 2019 WL 608830, at *2 (S.D. Ohio Feb. 13, 2019). Since this issue arises on a motion to strike, the burden will instead rest on Plaintiffs. To succeed on a motion to strike, then, the Plaintiffs must show, as a legal matter, that purchasers of the Genie SIM are not necessary parties for purposes of this litigation.

9

The Plaintiffs argue that joinder of third parties as defendants is not necessary merely because these third parties may also be liable for the underlying conduct in concert with Mr. Shoukry. Mr. Shoukry specifically challenges the failure to join additional defendants on the claim of a conspiracy to defraud. (ECF No. 19). In turn, Plaintiffs argue that it is well established that is not necessary to join all tortfeasors as defendants where liability is joint and several. (ECF No. 20 at 2). "[A] person's status as a joint tortfeasor does not make that person a necessary party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (holding joint tortfeasors were not necessary parties under Rule 19(a)); *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-00292, 2014 WL 186898, at *5 (S.D. Ohio Jan. 14, 2014), *aff'd*, 826 F.3d 297 (6th Cir. 2016) ("[I]t is axiomatic that joint tortfeasors, including those in an agency relationship, are not indispensable parties."); *Joe Hand*, 2013 WL 3876176, at *3 ("The mere fact that a defendant points to the liability of another person does not render that other person indispensable to the litigation."); *Malibu Media, LLC v. Patel*, No. 2:14-CV-559, 2015 WL 12698035, at *1 (S.D. Ohio May 12, 2015) ("[T]he possibility of related third-party liability—either by way of joint liability, contribution or vicarious liability—does not require the joinder of those parties to a single suit."). As noted by this Court in *Peres v. Third Federal Savings & Loan Association of Cleveland*, should a third party be liable to plaintiff or defendant, "there are other avenues in which they can be held accountable," including Rule 14 of the Federal Rules of Civil Procedure, which allows a defendant to file a third-party complaint. No. 1:18-cv-18, 2019 WL 1318130, at *3 (S.D. Ohio Mar. 22, 2019).

Turning to the prongs of Rule 19, this Court is satisfied that Mr. Shoukry's arguments as to joinder of indispensable parties are legally insufficient. Proceeding solely against Mr. Shoukry will allow Plaintiffs the full relief they seek, including on their conspiracy to defraud claim. Mr.

Shoukry has raised only the issue of shared liability, not any shared interests that could be compromised by a failure to join unnamed, unidentified co-conspirators. Moreover, this Court does not see how disposing of Plaintiffs' claims against Mr. Shoukry that stem from his alleged sales of the Genie SIM could impair or impede Plaintiffs' customers from protecting their own interests. This Court also does not see how the failure to join Plaintiffs' customers who may have purchased a Genie SIM from Mr. Shoukry will place any existing party at substantial risk of incurring double, multiple, or otherwise inconsistent obligations. As such, these unidentified customers are not required to be joined under Rule 19 of the Federal Rules of Civil Procedure and Mr. Shoukry's affirmative defense to this end is legally insufficient. This Court thereby **GRANTS** Plaintiffs' Motion to Strike Defendant's Second Affirmative Defense.

### B. Defendant's Motion for Summary Judgment

When a party moves for summary judgment, the Federal Rules of Civil Procedure place a burden on that party to demonstrate that there is no genuine issue as to any material fact and, as a result, that the party is entitled to judgment as a matter of law. This burden includes identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56). Only once a party has so carried its initial burden will the burden shift to the non-moving party to raise specific facts that demonstrate a genuine issue of material fact remains.

Defendant's Motion for Summary Judgment, filed with the aid of counsel, is only three pages in length and attaches a "Proposed Undisputed Facts," as well as a four-page affidavit of the Defendant. (ECF No. 21). This motion opens with the text of Rule 56 and a single case citation as to a movant's burden, but otherwise contains no citations to the record, other evidence, or legal

11

authorities. It contains only unsupported assertions that Defendant believes entitle him to summary judgment and dismissal of this suit. His Proposed Undisputed Facts likewise are unsubstantiated by any evidence, but for the self-serving affidavit of the Defendant himself. As this Court has held previously, self-serving affidavits alone cannot create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). Nor can such a document establish that no issue of material fact exists. His motion does not address several of Plaintiffs' claims against him specifically, let alone demonstrate that no issue of material fact exists. Furthermore, it would be difficult to know what factual issues even exist in this case, given that little to no discovery has occurred to date.[1] Defendant's cursory and unsubstantiated motion, filed before any real discovery, fails to meet the burden placed on him by Rule 56. Accordingly, his Motion for Summary Judgment is **DENIED WITHOUT PREJUDICE**. Defendant is not foreclosed from filing a future motion for summary judgment in accordance with Rule 56.

Furthermore, Plaintiffs' response in opposition includes a Rule 56(d) declaration. Rule 56(d) of the Federal Rules of Civil Procedure establishes the proper procedure when a party asserts that additional discovery is necessary to respond to a motion for summary judgment. Under Rule 56(d), the nonmovant must show by affidavit or declaration that it cannot present facts essential to justifying its opposition to summary judgment because additional discovery is necessary. Fed. R. Civ. P. 56(d). A court may then defer consider the motion for summary judgment, deny the motion,

---

[1] Defendant filed his motion fifteen days after the parties' initial disclosures were due and just under a year before the close of discovery. (ECF No. 18). Plaintiff AT&T represents that it has propounded one set of discovery requests, to which the Defendant "provided incomplete responses." (ECF No. 25 at 10). No depositions have been taken. (*Id.*).

allow time to obtain affidavits or declaration or otherwise take discovery, or issue any other appropriate order. *Id.*

Rule 56(d) is intended to provide a mechanism for the parties and the court "to give effect to the well-established principle that 'the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment.'" *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-CV-1285, 2012 WL 1340369, at *2 (S.D. Ohio April 17, 2012) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009)). Granting summary judgment is inappropriate where a party has not had sufficient opportunity to conduct discovery. *See Dish Network LLC v. Fun Dish Inc.*, No. 1:08-CV-1540, 2011 WL 13130841, at *3 (N.D. Ohio Aug. 12, 2011).

An affidavit or declaration submitted under Rule 56(d) must "indicate to the district court [the party's] need for discovery, what material facts [the party] hopes to uncover, and why [the party] has not previously discovered the information." *Clifford v. Church Mut. Ins. Co.*, No. 2:13-CV-853, 2014 WL 5529664, at *2 (S.D. Ohio Nov. 3, 2014) (alterations in original) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). A district court that denies a Rule 56(d) request for discovery relying only on general and conclusory statements does not abuse its discretion. *See Snow v. Kemp*, No. 10-2363, 2011 WL 345864, at *1 (W.D. Tenn. Feb. 2, 2011) (citing *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)). AT&T submitted a declaration that details the discovery undertaken to date, AT&T's outstanding discovery requests and needs, and how these discovery needs relate to the underlying claims at issue and investigation efforts thus far (ECF No. 25-2). The declaration complies with Rule 56(d). Therefore, even if this Court had not already denied the Defendant's Motion for Summary Judgment, this Court would have denied it on the alternative grounds of Plaintiff's legitimate need for discovery under Rule

13

56(d). Discovery has just begun, the Plaintiffs have not been dilatory in their discovery efforts, it is unclear the extent to which Mr. Shoukry is using his Motion for Summary Judgment to escape discovery, and the ability to take discovery will impact this Court's ability to rule on a future motion for summary judgment on a more complete record. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (considering factors such as whether desired discovery could change a ruling, how long discovery has lasted, whether the party seeking relief was dilatory in its discovery efforts, and whether the movant was responsive to discovery requests when assessing whether to grant relief under Rule 56(d)).

## IV. CONCLUSION

For the reasons discussed above, this Court **GRANTS** the Plaintiffs' Motion to Strike (ECF No. 17) and **DENIES WITHOUT PREJUDICE** Defendant's Motion for Summary Judgment (ECF No. 21).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: July 26, 2021**